UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
STANLEY TAYLOR,

              Plaintiff,                                   **REPORT AND RECOMMENDATION**
                                                                                       **19 CV 4797 (EK)(LB)**

     - against –

NEW YORK CITY FRESH MARKET
and JOHN DOE, Security Guard,

              Defendants.
-----------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

       Plaintiff Stanley Taylor ("plaintiff"), proceeding *pro se,* brings this civil rights action pursuant to Section 1981, against New York City Fresh Market ("Fresh Market"), a grocery store, and John Doe, a security guard at Fresh Market (collectively, "defendants"), alleging race discrimination. Am. Compl., ECF No. 6. Plaintiff moves pursuant to Rule 55(b) of the Federal Rules of Civil Procedure and Local Civil Rule 55.2 for entry of a default judgment against defendant Fresh Market. Notice Mot. Default J. 1, ECF No. 18.[1] The Honorable Eric R. Komitee

---

[1] Plaintiff alleges that the John Doe defendant is a security guard who worked for defendant Fresh Market. Am. Compl. ¶ 6. As the John Doe defendant has not been identified or served, plaintiff does not seek a default judgment against the John Doe defendant. See Notice Mot. Default J. 1, ECF No. 18; Pl.'s Decl. Supp. Mot. Default J. ¶ 14, ECF No. 19 [hereinafter "Taylor Decl."]. Therefore, I respectfully recommend that plaintiff's complaint against the John Doe should be dismissed.

  Despite dismissal of the John Doe, plaintiff's claims against Fresh Market may still proceed. "The Second Circuit has held that the doctrine of *respondeat superior* applies to Section 1981 claims . . . Under New York law, the doctrine 'renders an employer vicariously liable for a tort committed by an employee while acting within the scope of his employment,' but not 'for torts committed by the employee for personal motives unrelated to the furtherance of the employer's business.'" Bishop v. Best Buy, Co., No. 08 Civ. 8427 (LBS), 2010 WL 4159566, at *6 (S.D.N.Y. Oct. 13, 2010) (citations omitted), aff'd sub nom. Bishop v. City of New York, 518 F. App'x 55 (2d Cir. 2013); see also Feacher v. Intercontinental Hotels Grp., 563 F. Supp. 2d 389, 405-06 (N.D.N.Y. 2008) (collecting cases of courts' various approaches to vicarious liability under § 1981). In addition, under the New York City Human Rights Law, an employer can be held vicariously liabile for an employee's discriminatory conduct if: (1) "the offending employee 'exercised managerial or supervisory responsibility;" (2) "the employer knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take 'immediate and appropriate corrective action;'"

referred plaintiff's motion for a default judgment to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b).[2]  Electronic Order 9/21/2020.  For the reasons set forth below, it is respectfully recommended that plaintiff's motion should be granted as to liability, with the exception of his intentional infliction of emotional distress claim.  As plaintiff does not provide an evidentiary basis for the Court to calculate his damages, if this Report is adopted, an inquest should be held regarding plaintiff's damages.

### BACKGROUND[3]

Plaintiff, Mr. Stanley Taylor, is a Black man, a United States veteran, and a resident of New York.  Am. Compl. ¶ 4.  On or about August 21, 2017, plaintiff entered Fresh Market, located at 150 Myrtle Avenue in Brooklyn, New York, to shop for groceries at around 6:45 p.m.  Id. ¶¶ 5, 13.  Plaintiff purchased several things, including eggplant, ginger, and tofu.  Id. ¶ 14.  After paying for his groceries, plaintiff was stopped before he exited the store by defendant John Doe, who worked as a security guard for Fresh Market.  Id. ¶¶ 6, 15.  John Doe had previously stopped plaintiff on two prior visits to Fresh Market.  Id. ¶ 17. During those prior visits to Fresh Market, John Doe searched plaintiff's shopping bag after plaintiff had completed his check-out but did not search the shopping bags of White customers after they completed check-out. Id. ¶¶ 11-12.

---

or (3) "the employer 'should have known' of the offending employee's unlawful discriminatory conduct yet 'failed to exercise reasonable diligence to prevent [it].'" Schaper v. Bronx Lebanon Hosp. Ctr., 408 F. Supp. 3d 379, 396 (S.D.N.Y. 2019) (citations omitted); N.Y.C. Admin. Code § 8-107(13).

Here, it can be reasonably inferred from the complaint's allegations that the John Doe was acting within the scope of his employment as a security guard when he searched plaintiff's bag and detained him. Moreover, the John Doe referred to a store sign in support of his authority, Am. Compl. ¶ 21, and a Fresh Market representative effectively ratified the John Doe's conduct, id. ¶ 25 ("A store representative for NYC Fresh Market told me, in sum and substance, that the security guard could 'do whatever he wanted.'").

[2] On February 11, 2020, this action was reassigned from the Honorable Kiyo A. Matsumoto to the Honorable Eric R. Komitee. Dkt. Entry 2/11/2020.

[3] The facts in this section are drawn from the uncontested allegations in plaintiff's amended complaint and are accepted as true for the purpose of deciding this motion.  See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997) ("It is, of course, ancient learning that a default judgment deems all the well-pleaded allegations in the pleadings to be admitted.").

On August 21, 2017, after John Doe asked to search plaintiff's shopping bag, plaintiff asked John Doe why he only searched bags belonging to Black customers but not other customers. Am. Compl. ¶¶ 13, 16-18. In turn, John Doe grabbed plaintiff's bag from his hands without his permission and began to search the bag. Id. ¶ 19. John Doe said that he had the right to search any customer's bag, told plaintiff to look at a sign outside of the store, and stated, in sum and substance, he had "the right to do anything he wanted." Id. ¶ 21. John Doe kept possession of plaintiff's grocery bag and detained plaintiff for approximately thirty minutes. Id. ¶¶ 22-23. At some point, Fresh Market "store management" arrived and caused "a scene," id. ¶ 24, and a Fresh Market "store representative" told plaintiff, in sum and substance, that John Doe could "do whatever he wanted," id. ¶ 25. When plaintiff was eventually able to retrieve his bag, he left the store. Id. ¶ 26.

Plaintiff experienced "emotional distress, embarrassment, and humiliation at being singled out for poor treatment on the basis of [his] race." Id. ¶ 27. His distress manifested in physical symptoms and, afraid that he was having a stroke, plaintiff went that evening to the emergency room, where he was treated for anxiety and chest pain. Id. ¶¶ 28-29. Plaintiff returned to the hospital for multiple follow-up visits to treat his chest pain and other symptoms caused by defendants' conduct. Id. ¶ 31. Plaintiff continues to suffer "significant disruption" to his sleep as a result of defendants' conduct. Id. ¶ 32.

## PROCEDURAL HISTORY

On August 16, 2019, *pro se* plaintiff commenced this civil rights action against defendants by filing the complaint, which alleged claims under 42 U.S.C. § 1983 and *Bivens*. ECF No. 1 at 4.[4]

---

[4] Using the Court's complaint form, plaintiff described his claim as a "civil rights violation 'Shopping while Black,'" and alleged, *inter alia*, that he was "unreasonably detained and searched" on August 21, 2017, and "[t]his unreasonable and willful detention was done without plaintiff's consent and has caused plaintiff to suffer severe emotional and physical harm." ECF No. 1 at 4-6.

On September 6, 2019, plaintiff's request to proceed *in forma pauperis* was granted, but plaintiff's original complaint was dismissed *sua sponte* for failure to state a claim on which relief may be granted, as plaintiff failed to allege that defendants acted under color of state or federal law. Mem. & Order, ECF No. 4. However, plaintiff was granted leave to file an amended complaint. See ECF Nos. 4-5. On October 22, 2019, plaintiff filed an amended complaint and jury demand against Fresh Market and the John Doe security guard for intentional race discrimination pursuant to 42 U.S.C. § 1981, as well as claims under state and local law pursuant to 28 U.S.C. 1367, namely claims for false imprisonment, intentional infliction of emotional distress, and discrimination under the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(4). Am. Compl. ¶¶ 1, 3, 5-6, 43, 48, 51.

After the Court directed the United States Marshals Service (USMS) to serve defendant Fresh Market without prepayment of fees, the USMS served the summons and amended complaint on defendant Fresh Market on November 26, 2019. ECF Nos. 7-9.[5] Although Fresh Market's response to the amended complaint was due on December 17, 2019, Fresh Market failed to answer or otherwise respond to plaintiff's amended complaint. ECF No. 10. Accordingly, the Court ordered defendant Fresh Market to respond to plaintiff's amended complaint by February 17, 2020, and the Clerk of Court mailed a copy of the Order to Fresh Market by overnight mail.[6] ECF Nos. 10-11. After defendant Fresh Market failed to answer or otherwise respond to plaintiff's amended

---

[5] The process receipt reflects that the USMS personally served Ana Maria Santos, who is identified as a manager. See ECF No. 9. Cf. Durso v. Barsyl Supermarkets Inc., No. 11 CV 5544 (NG)(RML), 2016 WL 3546330, at *3 (E.D.N.Y. June 23, 2016) (finding that service on supermarket manager was calculated to give fair notice to supermarket that was not a large or complex business).
[6] The FedEx tracking system reflects that the Order was delivered on January 22, 2020, at 10:25 a.m., and signed for by "P. STELLA." See ECF No. 11; proof-of-delivery for tracking No. 808881290263, available at https://www.fedex.com/apps/fedextrack (last visited December 5, 2020).

4

complaint by February 17, 2020, plaintiff requested a certificate of default on March 3, 2020, ECF No. 12,[7] which the Clerk of Court entered on March 13, 2020, ECF No. 14.

On September 16, 2020, plaintiff filed the instant motion for a default judgment pursuant to Rule 55(b) of the Federal Rules of Civil Procedure and Local Civil Rule 55.2, seeking $1,000,000 in compensatory damages and $1,000,000 in punitive damages. Notice Mot. Default J., ECF No. 18, Proposed Default J., ECF No. 19 at 21. On September 21, 2020, plaintiff's motion, ECF No. 18, was referred to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). Electronic Order 9/21/2020.

## DISCUSSION

### I.     Requirements for Entering a Default Judgment

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. See Fed. R. Civ. P. 55(b)(2). Here, a default was entered and defendant Fresh Market has failed to appear, plead, or otherwise defend this action—despite being served with the summons and amended complaint, ordered to answer, and mailed the default motion.[8]

---

[7] On the same day that he filed his request for a certificate of default, plaintiff filed a motion for default judgment that was defective. See ECF No. 13 at 4. However, plaintiff was granted an extension of time to file a motion for default judgment until September 22, 2020. See ECF No. 16; Electronic Order 7/15/2020.
[8] Pursuant to this Court's local rules, plaintiff provided (1) the Clerk's certificate of default, (2) a copy of the amended complaint, and (3) a proposed form of default judgment, and mailed to defendant all the motion papers filed with the Court. See Loc. Civ. R. 55.2; Aff. Service, ECF No. 19 at 4. In light of plaintiff's *pro se* status, the Court excuses plaintiff's failure to file a memorandum of law in support of his motion. See Loc. Civ. R. 7.1(a)(2).

The Second Circuit has an "oft-stated preference for resolving disputes on the merits," making default judgments "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)). Although on a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted," Transatlantic Marine Claims Agency, Inc., 109 F.3d at 108, the Court still has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief," Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Rolls-Royce PLC, 688 F. Supp. 2d at 153 (citation omitted).

Here, because plaintiff is proceeding *pro se*, the Court "read[s] his papers liberally and interpret[s] them to raise the strongest arguments that they suggest." Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006) (internal quotation marks and citation omitted). A complaint filed *pro se* "is to be liberally construed and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).[9]

---

[9] Plaintiff's amended complaint and motion for default judgment were prepared with the help of an attorney from the City Bar Justice Center's Pro Se Legal Assistance Project. See ECF No. 18 at 1, n.1; ECF No. 6 at 1, n.1. Although plaintiff has received limited-scope assistance with his pleadings, he has not received the benefit of full legal representation and is entitled to the substantial solicitude afforded to *pro se* litigants. See Tracy v. Freshwater, 623 F.3d 90, 102 (2d Cir. 2010) (explaining that district courts may exercise their

6

## II. LIABILITY

### A. Plaintiff's § 1981 & Related False Imprisonment Claims

42 U.S.C. § 1981 "provides a remedy 'against private actors who intentionally discriminate on the basis of race or ethnicity.'" Wong v. Yoo, 649 F. Supp. 2d 34, 68 (E.D.N.Y. 2009) (citations omitted). To establish a § 1981 claim, a plaintiff must adequately plead the following elements: "[i] the plaintiff is a member of a racial minority; [ii] [there was] an intent to discriminate on the basis of race by the defendant; and [iii] the discrimination concerned one or more of the activities enumerated in the statute . . ." Benzinger v. NYSARC, Inc. N.Y.C. Chapter, 385 F. Supp. 3d 224, 231 (S.D.N.Y. 2019) (quoting Mian v. Donaldson, Lufkin & Jenrette Secs. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993)). Although the second and third elements require more discussion, the first element is easily satisfied: plaintiff is Black and therefore a member of a racial minority. See Am. Compl. ¶ 4.

§ 1981 covers only intentional discrimination. See, e.g., Benzinger, 385 F. Supp. 3d at 231 (citation omitted) ("[A] plaintiff must show that a defendant's acts were purposefully discriminatory and racially motivated."). In this Circuit, courts previously required a plaintiff to show that a defendant's discriminatory intent was a substantial or motivating factor behind the conduct complained of to establish liability under § 1981. See, e.g., Wong, 649 F. Supp. 2d at 69 (citing Tolbert v. Queens College, 242 F.3d 58, 69 (2d Cir.2001)). However, resolving a split among the circuits regarding § 1981's causation standard, the Supreme Court recently held that "a plaintiff must initially plead and ultimately prove that, but for race, [plaintiff] would not have suffered the loss of a legally protected right." Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media, 140 S. Ct. 1009, 1014, 1019 (2020). Thus, plaintiff now bears the burden of plausibly

---

discretion in determining what degree of solicitude a *pro se* litigant should receive "based on the totality of the relevant circumstances").

alleging that race was a but-for cause of his injury even at the pleading stage. See id., at 1014. The Court further instructed that "a § 1981 plaintiff first must show that he was deprived of the protected right and then establish causation . . ." Id., at 1018. Accordingly, I will discuss the right deprived first.

1. *The Enumerated Activity*

The activities enumerated in § 1981 "include the rights 'to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property.'" Wong, 649 F. Supp. 2d at 69. Here, plaintiff appears to allege that defendants infringed on his federally protected right to make and enforce contracts. See Am. Compl. ¶¶ 34, 40. Several courts have dismissed "make and enforce contracts" § 1981 claims in the context of retail transactions where the discrimination occurs *after* plaintiff's purchase is completed, as "there is no continuing contractual relationship. Instead, the relationship is based on a single discrete transaction—the purchase of goods." Bishop v. Toys "R" Us-NY LLC, 414 F. Supp. 2d 385, 392-93 (S.D.N.Y. 2006) (collecting cases), aff'd sub nom. Bishop v. Toys R Us, 385 F. App'x 38 (2d Cir. 2010); see also Bishop v. Best Buy, Co., No. 08 Civ. 8427 (LBS), 2010 WL 4159566, at *4 (S.D.N.Y. Oct. 13, 2010) (collecting cases), aff'd sub nom. Bishop v. City of New York, 518 F. App'x 55 (2d Cir. 2013). Here, the incident giving rise to the complaint occurred after plaintiff completed his grocery purchase. See Am. Compl. ¶¶ 8, 13-27. Because plaintiff was searched and detained by the John Doe guard after he made his purchases, see id. ¶¶ 14-15, plaintiff cannot prevail on a "make and enforce contracts" claim based on this incident. However, this is not fatal to plaintiff's motion, as plaintiff can proceed under an alternative theory: an "equal benefit" clause claim.

§ 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . ." 42 U.S.C. § 1981(a)). Although state action is not required, a § 1981 "equal benefit" clause claim "requires a nexus to state proceedings or laws[.]" Gignac v. Ontario Cty., No. 08 CV 6431L, 2012 WL 113348, at *1 (W.D.N.Y. Jan. 12, 2012) (citations omitted); see also Pierre v. J.C. Penney Co., 340 F. Supp. 2d 308, 310-13 (E.D.N.Y. 2004) (citing Phillip v. Univ. of Rochester, 316 F.3d 291, 292 (2d Cir.2003)). To state an "equal benefit" clause claim, a plaintiff must: "(1) allege racial animus; (2) identify a relevant law or proceeding for the 'security of persons and property;' and (3) allege that defendants have deprived [plaintiff] of 'the full and equal benefit' of this law or proceeding.'" Tower Properties LLC v. Vill. of Highland Falls, No. 14 Civ. 04502 (NSR), 2015 WL 4124499, at *14 (S.D.N.Y. July 7, 2015) (internal quotation marks omitted) (quoting Phillip, 316 F.3d at 298); Wade v. Kay Jewelers, Inc., No. 17 CV 990 (MPS), 2018 WL 4440532, at *7 (D. Conn. Sept. 17, 2018) (citation omitted).

Liberally construed, the amended complaint alleges a claim under the "equal benefit" clause. Plaintiff alleges that defendants discriminated against plaintiff on the basis of his race by denying him "the same privileges of shopping for groceries as white customers" and by falsely imprisoning him. See Am. Compl. ¶¶ 35–37; cf. Martin v. J.C. Penney Corp., 28 F. Supp. 3d 153, 157 (E.D.N.Y. 2014) (collecting cases) ("Plaintiffs' allegations that defendants assaulted, battered, and falsely imprisoned them on suspicion of shoplifting because of the color of their skin fall within the ambit of 'laws or proceedings for the security of persons and property' protected by 1981's equal benefit clause."); see also Pierre, 340 F. Supp. 2d at 312–13 (concluding that state law against false imprisonment is "clearly intended for the 'security of persons.'"); Hathron v.

9

Quick-Trip Corp., No. 08 CV 618 (GKF)(PJC), 2008 WL 5122605, at *1 (N.D. Okla. Dec. 4, 2008) (collecting cases where § 1981 "equal benefit" clause claims proceeded based on "alleged detentions or arrest or searches by police or security personnel").

"To prevail on a false imprisonment claim under New York law, a plaintiff must show that '(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'"[10] Emanuel v. Griffin, No. 13 Civ. 1806 (JMF), 2015 WL 1379007, at *11 (S.D.N.Y. Mar. 25, 2015) (citing Jocks v. Tavernier, 316 F.3d 128, 134–35 (2d Cir.2003) quoting Broughton v. New York, 37 N.Y.2d 451, 456 (1975)). "To prove intent, a plaintiff must show that the defendant either: (a) confined or intended to confine the plaintiff or (b) affirmatively procured or instigated the plaintiffs' arrest." Hernandez v. United States, 939 F.3d 191, 199 (2d Cir. 2019) (quoting King v. Crossland Sav. Bank, 111 F.3d 251, 255 (2d Cir. 1997)). Under New York law, false imprisonment is considered a dignitary tort and thus plaintiff must show that he was aware of and was harmed by the confinement. Damiano v. City of Amsterdam, 466 F. Supp. 2d 456, 460–61 (N.D.N.Y. 2006) (citations omitted). However, New York law provides for a statutory defense to false imprisonment claims. See N.Y. Gen. Bus. Law § 218 ("Defense of lawful detention").[11]

---

[10] False arrest and false imprisonment "share the same elements under New York law." Rizk v. City of New York, 462 F. Supp. 3d 203, 220 (E.D.N.Y. 2020); see also Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991) ("In New York, the tort of false arrest is synonymous with that of false imprisonment.").

[11] N.Y. Gen. Bus. Law § 218 (McKinney) ("In any action for false arrest, false imprisonment, unlawful detention, defamation of character, assault, trespass, or invasion of civil rights, brought by any person by reason of having been detained on or in the immediate vicinity of the premises of (a) a retail mercantile establishment for the purpose of investigation or questioning as to . . . the ownership of any merchandise, . . . it shall be a defense to such action that the person was detained in a reasonable manner and for not more than a reasonable time to permit such investigation or questioning by . . . the owner of the retail mercantile establishment or . . . his authorized employee or agent, and that such officer, owner, employee or agent had reasonable grounds to believe that the person so detained was . . . committing or attempting to commit larceny . . .").

Here, plaintiff alleges that his bag was grabbed from him without his permission; he was not free to leave; the guard and Fresh Market representative told plaintiff that the guard could "do anything" and "whatever he wanted;" and plaintiff was detained for thirty minutes while the guard kept plaintiff's bag of purchased groceries. See Am. Comp. ¶¶ 19-27; id. at ¶ 20 ("I was not free to leave."). Cf. Rosado v. Vill. of Goshen, No. 16 Civ. 6916 (NSR), 2019 WL 1437522, at *7 (S.D.N.Y. Mar. 31, 2019) (citations omitted) (explaining that factors suggesting a seizure without consent may include "prolonged retention of a person's belongings"). Furthermore, Fresh Market management personnel arrived and caused "a scene" and "considerable embarrassment" to plaintiff. Am. Comp. at ¶ 24. After plaintiff was able to retrieve his bag of groceries, he exited the store, but due to his poor treatment, he experienced significant emotional distress that led to physical manifestations, including chest pain, that required treatment at the emergency room. Id. ¶¶ 26-29. Absent from the complaint are any facts that would suggest that the guard had reasonable grounds to detain plaintiff or that plaintiff was detained for a reasonable time to permit an investigation into suspected theft. Instead, the complaint plausibly shows that plaintiff was unlawfully searched and detained because of his race. Cf. Brown v. Wal-Mart Stores, Inc., No. 96 CV 1500, 1998 WL 178798, at *2 (N.D.N.Y. Apr. 10, 1998) (assuming *arguendo* that plaintiff could meet the first three elements of false imprisonment when "[w]ithin a minute and a half, [the employee] had detained plaintiff, searched his bag, checked his receipts, and, finding everything had been accounted for, sent him on his way[,]" but concluding that the detention was privileged and not unreasonable); see also Jacques v. Sears, Roebuck & Co., 30 N.Y.2d 466, 472-74 (1972) (discussing the history of New York General Business Law § 218 and the meaning of "reasonable detention").

11

Although the amended complaint is thin on details, for the purposes of this motion, plaintiff's allegations are sufficient to state an "equal benefit" clause claim in connection with his false imprisonment. Plaintiff's confinement and the resulting harm can be further considered at a hearing on damages.

*2. Discriminatory Intent & Causation*

A plaintiff can establish intentional discrimination for a § 1981 claim through direct or circumstantial evidence. Bary v. Delta Airlines, Inc., No. 02 CV 5202 (DGT), 2009 WL 3260499, at *8 (E.D.N.Y. Oct. 9, 2009), aff'd, 553 F. App'x 51 (2d Cir. 2014). At the pleading stage, a plaintiff must at least "specifically allege the 'circumstances giving rise to a plausible inference of racially discriminatory intent.'" Wade, 2018 WL 4440532, at *7 (quoting Yusuf v. Vassar Coll., 35 F.3d 709, 713 (2d Cir.1994)). "An 'inference of discrimination arises when [an] individual of one race [is] treated less favorably than those of another race who are similarly situated.'" Best Buy, Co., 2010 WL 4159566, at *5 (alterations in original) (citation omitted). "If a plaintiff seeks to draw inferences of discrimination by showing that he was similarly situated to other individuals to whom he compares himself, the situations 'need not be identical, but there should be a reasonably close resemblance of facts and circumstances.'" Bishop v. Toys »R» US-NY, LLC, No. 04 Civ. 9403 (PKC), 2009 WL 440434, at *6 (S.D.N.Y. Feb. 19, 2009) (quoting Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir.2001)), aff'd sub nom. Bishop v. Toys R Us, 385 F. App'x 38 (2d Cir. 2010). Because defendants generally do not leave "a smoking gun" and directly establishing purposeful discrimination is often a challenge, plaintiffs frequently "must rely on the cumulative weight of circumstantial evidence.'" Wong, 649 F. Supp. 2d at 69 (quoting Norton v. Sams Club, 145 F.3d 114, 119 (2d Cir.1998)); Bary, 2009 WL 3260499, at *8 (citation omitted). Indeed, "[a]n invidious discriminatory purpose may often be inferred from the totality of the

relevant facts." Martin, 28 F. Supp. 3d at 157 (quoting Tolbert, 242 F.3d at 70). For example, although it is not sufficient, a defendant's hostility to or mistreatment of a plaintiff may support an inference of race-based discrimination. Toys »R» US-NY, LLC, 2009 WL 440434, at *6 (citing Lizardo, 270 F.3d at 102).[12]

Here, plaintiff has alleged sufficient facts to make out a *prima facie* case under § 1981 and support an inference that defendants treated plaintiff less favorably than White customers because plaintiff is Black. Plaintiff's amended complaint contains more than conclusory allegations of racial discrimination. He points to his repeated experience at this grocery store of being treated differently from similarly situated White customers. Thus, plaintiff's amended complaint alleges more than "bald assertions of discrimination—unsupported by any meaningful comments, actions, or examples of similarly-situated persons outside of the Plaintiff's protected class being treated differently[.]" Fouche v. St. Charles Hosp., 64 F. Supp. 3d 452, 457 (E.D.N.Y. 2014)). Plaintiff alleges that he previously visited Fresh Market at least two times before the August 21, 2017, incident, and each time, the John Doe guard searched his shopping bag after he had completed the

---

[12] The McDonnell Douglas burden-shifting framework, borrowed from the Title VII context, is used by courts to evaluate circumstantial evidence of discrimination in § 1981 cases. Bary, 2009 WL 3260499, at *8 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). See also Mann v. XPO Logistics Freight, Inc., 819 F. App'x 585, 594 n.15 (10th Cir. 2020) (summary order) (noting that the Supreme Court's ruling in Comcast Corp. "did not displace McDonnell Douglas's application to § 1981 claims"); see, e.g., Rubert v. King, No. 19 Civ. 2781 (KMK), 2020 WL 5751513, at *6 (S.D.N.Y. Sept. 25, 2020) ("In the Second Circuit, § 1981 claims are generally 'assessed using the burden-shifting framework established by the Supreme Court in McDonnell Douglas . . .").

Under McDonnell Douglas, plaintiff bears the initial burden of pleading a *prima facie* case of discrimination. See Mears v. Allstate Indem. Co., 336 F. Supp. 3d 141, 149 (E.D.N.Y. 2018) (discussing standard at pleading stage on motion to dismiss pursuant to Rule 12(b)(6)). Plaintiff's initial burden to "identify 'circumstances giving rise to an inference of discrimination on the basis' of race" is "minimal," and such an inference *"*arises when [an] individual of one race [is] treated less favorably than those of another race who are similarly situated." Bary, 2009 WL 3260499, at *9 (citations omitted). When defendants default, they fail to rebut the presumption of discrimination created when a plaintiff pleads a *prima facie* case. See, e.g. Francis v. Ideal Masonry, Inc., No. 16 CV 2839 (NGG)(PK), 2018 WL 4292171, at *5-6 (E.D.N.Y. Aug. 3, 2018), report and recommendation adopted, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018), appeal dismissed (Nov. 29, 2018).

check-out process but did not search the shopping bags of White customers after check-out. Am. Compl. ¶¶ 8, 11-12, 17.[13] Cf. Wade, 2018 WL 4440532, at *8 (concluding that plaintiff did not adequately allege racial animus where plaintiff made "no allegations at all that he was singled out for disparate treatment relative to shoppers of other racial groups."). When plaintiff asked the John Doe guard why he only searched Black customers' bags but not other customers' bags, the guard told plaintiff he had the right to search any customer's bag but also that that he had "the right to do anything he wanted." Am. Compl. ¶¶ 18-21. Cf. Bary, 2009 WL 3260499, at *8–10 (internal citations omitted) ("[A]ll defendant had to do was bring forth some legitimate, non-discriminatory explanation for its conduct. The only explanation provided by defendant for why it might have required plaintiff to check in his merchandise bag was 'that Delta has the discretion to restrict or limit a passenger's carry-on luggage.' Delta may very well have such discretion, but defendant offered no legitimate, non-discriminatory explanation for why it exercised that discretion to restrict plaintiff's carry on privilege while not preventing other passengers from carrying on their bags.").

Because Fresh Market has defaulted, it has not rebutted plaintiff's *prima facie* case, and the Court will not speculate as to what non-discriminatory reasons might exist for defendants' disparate treatment of plaintiff. In light of the totality of the circumstances alleged, I conclude that plaintiff has adequately alleged both discriminatory intent and that race was the but-for cause of his injuries.[14]

---

[13] In addition, on prior visits to Fresh Market, the John Doe guard confiscated plaintiff's bag that he brought into the store and kept his bag while plaintiff was shopping, but the John Doe did not confiscate the bags of any White shoppers. Am. Compl. ¶¶ 9-10, 17.

[14] Although the Supreme Court did not decide whether the complaint's allegations in Comcast Corp. were sufficient to state a claim under a but-for causation test, the Court explains the causation requirement: "[W]hat would have happened if the plaintiff had been white? . . . If the defendant would have responded the same way to the plaintiff even if he had been white, an ordinary speaker of English would say that the plaintiff received the 'same' legally protected right as a white person. Conversely, if the defendant would have responded differently but for the plaintiff's race, it follows that the plaintiff has not received the same right as a white person." 140 S. Ct. at 1015, 1019.

Had defendants responded to plaintiff's amended complaint, they may have established that they did not harbor racial animus or that their conduct "cannot be characterized as depriving [Plaintiff] of the equal benefit of proceedings for the security of persons and property.'" Best Buy, Co. Inc., 2010 WL 4159566, at *6 (citation omitted). However, in light of Fresh Market's default, the Court is left only with the facts alleged and the resulting inferences from plaintiff's complaint, which suggest that, but-for his race, plaintiff would not have been stopped, searched, detained, and humiliated.[15]  "[T]he procedural posture of this case makes it inappropriate to do anything other than enter a default judgment . . . after the failure of the defendants to appear." Greathouse v. JHS Sec. Inc., 784 F.3d 105, 118 (2d Cir. 2015) (Korman, J., sitting by designation, concurring in part and dissenting in part).

---

Although plaintiff's amended complaint states that the "discrimination against Plaintiff was substantially motivated by his race," Am. Compl. ¶ 36, the Court notes that the amended complaint was filed prior to Comcast Corp. at a time when the prevailing standard in this Circuit required only that race be a motivating or substantial factor for a defendant's conduct.  The Court will not penalize plaintiff for using a term of art when the facts alleged plausibly state a claim under the higher but-for standard.

[15]  Plaintiff also brings a claim pursuant to the New York City Human Rights Law. N.Y.C. Admin. Code § 8-107(4) [hereinafter "NYCHRL"].  Plaintiff alleges that Fresh Market "denied Plaintiff full and equal enjoyment of its facility on the basis of Plaintiff's race, and when it indirectly declared, through its employees' actions, that Plaintiff's patronage was unwelcome because of Plaintiff's race." Am. Compl. ¶ 48.  I conclude that plaintiff's allegations that defendants singled plaintiff out for harsher treatment because of his race, e.g., when his bags were confiscated and searched, he was detained for thirty minutes absent a proffer of suspicion, and the store staff caused a "scene" that humiliated him, suffice to entitle plaintiff to a default judgment on his NYCHRL claim.  Moreover, because plaintiff alleges sufficient facts to obtain a default judgment as to liability on his § 1981 "equal benefit" clause race discrimination claim, he necessarily prevails on his NYCHRL claim as to liability, as well.  "[T]he NYCHRL is 'a one-way ratchet,' by which interpretations of state and federal civil rights statutes can serve only 'as a floor below which the City's Human Rights law cannot fall.'" Cardwell v. Davis Polk & Wardwell LLP, No. 19 Civ. 10256 (GHW), 2020 WL 6274826, at *19 (S.D.N.Y. Oct. 24, 2020) (internal quotation marks omitted) (citation omitted) ("[T]he NYCHRL's standards governing discrimination claims are as or more generous to plaintiffs than those under the analogous federal statutes, so that a claim that satisfies federal law necessarily satisfies the NYCHRL."). See also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (explaining effect of the Local Civil Rights Restoration Act of 2005, N.Y.C. Local L. No. 85, on how NYCHRL claims should be analyzed). Cf. Benzinger, 385 F. Supp. 3d at 233, 239 (dismissing § 1981 "equal benefit" clause claim where plaintiff failed to allege the violation of an enumerated right but allowing NYCHRL § 8-107(4) claim to proceed); Martin, 28 F. Supp. 3d at 157-59 (denying defendants' summary judgment on § 1981 "equal benefit" clause claim where material issue of fact existed as to defendants' discriminatory intent in detaining plaintiffs and denying summary judgment on NYCHRL claim for the same reason).

15

### B. Intentional Infliction of Emotional Distress

A plaintiff alleging intentional infliction of emotional distress (IIED) "must satisfy an 'exceedingly high legal standard.'" DiRuzza v. Lanza, 685 F. App'x 34, 36 (2d Cir. 2017) (summary order) (quoting Chanko v. Am. Broad. Cos. Inc., 27 N.Y.3d 46, 57 (2016)). To prevail on an IIED claim in New York, plaintiff must establish four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." Chanko, 27 N.Y.3d 46, 56 (2016) (quoting Howell v. New York Post Co., 81 N.Y.2d 115, 121 (1993)). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Chanko, 27 N.Y.3d at 56 (quoting Howell, 81 N.Y.2d at 122). The outrageousness element is "most susceptible to a determination as a matter of law." Chanko, 27 N.Y.3d at 57 (citing Howell, 81 N.Y.2d at 121). Of the IIED claims considered by the New York Court of Appeals, "*every one* has failed because the alleged conduct was not sufficiently outrageous." Chanko, 27 N.Y.3d at 57 (emphasis in original) (quoting Howell, 81 N.Y.2d at 122). "The standard of outrageousness is an objective one; even if the defendant is aware of some peculiar susceptibility of the plaintiff to emotional distress, the conduct must still be objectively outrageous to be actionable." Marshall v. Marshall, No. 08-CV-1420 (KAM)(LB), 2010 WL 5477753, at *10 (E.D.N.Y. Dec. 7, 2010), report and recommendation adopted, 2010 WL 5477152 (E.D.N.Y. Dec. 30, 2010) (quoting Netzer v. Continuity Graphic Assoc., 963 F. Supp. 1308, 1327 (S.D.N.Y.1997)).

Here, the conduct alleged does not meet New York's definition of extreme and outrageous conduct.[16] Although the Court does not condone defendants' alleged statements or conduct, defendants' actions do not meet New York's stringent standard for extreme and outrageous conduct. Cf. Druschke v. Banana Republic, Inc., 359 F. Supp. 2d 308, 314 (S.D.N.Y. 2005) (collecting cases). As plaintiff has not alleged facts sufficient to state a claim for IIED, I respectfully recommend that plaintiff's motion for a default judgment on this particular claim should be denied.

### III. DAMAGES

On a motion for a default judgment, the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted). "There must be an evidentiary basis for the damages sought," Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012), and plaintiff carries the burden of proving damages, e.g., Liberty Mut. Ins. Co. v. Fast Lane Car Serv., Inc., 681 F. Supp. 2d 340, 346, 349 (E.D.N.Y. 2010). While the Court must ensure there is an evidentiary basis for the damages requested, the Court has discretion in deciding whether to make a determination based on evidence presented at a hearing or based on review of documentary evidence alone without a hearing. See Metro Found. Contractors Inc., 699 F.3d at 234.

Here, plaintiff seeks $1,000,000 in compensatory damages and $1,000,000 in punitive damages, or in the alternative, he requests that "the Court hold a hearing to assess Plaintiff's damages." Taylor Decl. ¶¶ 14-15, ECF No. 19 at 3; Proposed J., ECF No. 19 at 21. Plaintiff has not provided evidence to support the damages that he seeks. See ECF Nos. 18-19. Because

---

[16] Because plaintiff fails to satisfy this element, the Court need not examine the remaining elements.

17

plaintiff has failed to provide an evidentiary basis for the requested relief, I recommend that his request for damages should be denied without prejudice and that plaintiff's request for an inquest on damages should be granted.

## CONCLUSION

Accordingly, it is respectfully recommended that the Court should grant in part and deny in part plaintiff's motion for a default judgment. Plaintiff's motion should be granted as to liability on his Section 1981, false imprisonment, and NYCHRL claims, but should be denied on plaintiff's intentional infliction of emotional distress claim. Plaintiff's request for damages should be denied without prejudice, and plaintiff's request for a hearing to determine damages should be granted.

The Clerk of Court shall mail a copy of this Report and Recommendation to plaintiff and to defendant Fresh Market and shall note the mailing on the docket.[17]

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140, 152 (1985).

SO ORDERED.

Dated: December 23, 2020  
      Brooklyn, New York

            /S/  
LOIS BLOOM  
United States Magistrate Judge

---

[17] The Clerk of Court is also directed to send plaintiff the attached copies of all the unreported cases cited herein.